IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Corbis Corporation,                                    Case No. 3:07CV3741

        Plaintiff

   v.                                                      ORDER

Nick Starr, et al.,

        Defendants

    This is a copyright infringement case in which, following a jury verdict, plaintiff Corbis Corporation (Corbis) has moved for attorneys' fees from defendants Nick Starr d/b/a/ Master Maintenance (Master Maintenance) and West Central Ohio Internet Link, Ltd. (WCOIL). [Doc. 108]. In its motion, Corbis seeks and award of costs and attorneys' fees in the amount of $237,569.70.[1]

---

[1] Following an initial review of the motion, I ordered Corbis to submit unredacted billing invoices. [Doc. 119]. It has done so. [Docs. 120, 120-1].

For the reasons discussed below, I award attorneys' fees of $75,880.50, and costs of $19,762.13.

## Background

Corbis sued Master Maintenance and WCOIL for copyright infringement after Corbis discovered that Master Maintenance's website displayed four photographs as to which Corbis is the copyright holder. WCOIL had designed the website.[2]

The principal disputes between the parties throughout this case were: 1) the degree of culpability of each defendant for the infringement; and 2) whether the infringement was willful or innocent, and what damage award was appropriate as a result.

I granted summary judgment to Corbis on the issue of infringement on September 2, 2009, finding defendants jointly and severally liable. [Doc. 41]. At the same time, I denied summary judgment on the issues of willfulness and attorneys' fees.

After a four-day trial on damages, the jury awarded Corbis $14,280.[3]

## Discussion

The Copyright Act provides for a court "in its discretion" to "allow the recovery of full costs by or against any party," and to "also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

---

[2] The facts underlying this case are more thoroughly set forth in my summary judgment order of September 2, 2009. [Doc. 41]. I therefore only briefly summarize the relevant facts here.

[3] Under the Copyright Act, 17 U.S.C. § 504(a), a copyright infringer is liable for either actual or statutory damages, at the option of the copyright holder. The jury in this case awarded $9,520 in actual damages and $14,280 in statutory damage. After trial, Corbis elected the award of statutory damages. [Doc. 107].

## I. Whether Attorneys' Fees Are Appropriate

### A. Prevailing Party

Corbis argues that it is the "prevailing party" and thus entitled to attorneys' fees because: 1) I granted it summary judgment on the issue of infringement; and 2) a jury awarded damages.

Master Maintenance responds that Corbis "was not the prevailing party on all issues." [Doc. 113, at 4]. WCOIL similarly contends that defendants prevailed on Corbis' claim that defendants removed watermarks from the photos.

In a copyright infringement case, the prevailing party is generally "one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing the suit." *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir. 2007) (internal quotation and citation omitted).

Because Corbis succeeded on its copyright infringement claim, it is the prevailing party in this case.

### B. *Fogerty* Factors

While attorneys' fees are "not awarded automatically," they are "awarded routinely," in copyright infringement cases. *Thoroughbred Software*, *supra*, 488 F.3d at 362 (citing *Bridgeport Music v. Diamond Time*, 371 F.3d 883, 893 (6th Cir. 2004) and *Broad. Music, Inc. v. Rooster's Inc.*, 2006 WL 2038654, *3 (E.D. Ky. 2006)).

"There is no precise rule or formula for making these determinations [about attorneys' fees] but instead equitable discretion should be exercised in light of the considerations we have

identified." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (internal quotation and citation omitted).[4]

The Supreme Court explained in dicta that several factors are useful "to guide courts' discretion" in determining whether to award attorneys' fees under the Copyright Act. *Id.* at 534 n.19. This nonexclusive list of factors includes: "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)); *see also Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir. 2002). Because the list of factors is nonexclusive, "not every factor must weigh in favor of the prevailing party and other factors may be considered as well." *Diamond Time*, *supra*, 371 F.3d at 894.

Corbis argues that it is entitled to attorneys' fees because: 1) defendants' failure to settle the case was both frivolous and objectively unreasonable; 2) an award of attorneys' fees is necessary

---

[4] Those considerations include:

> the primary objective of the Copyright Act to encourage the production of original literary, artistic, and musical expression for the good of the public; the fact that defendants as well as plaintiffs may hold copyrights and run the gamut from large corporations to starving artists; the need to encourage defendants to seek to advance a variety of meritorious copyright defenses . . . to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement; and the fact that a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.

*Bridgeport Music v. Sony Music Entm't, Inc.*, 114 F. App'x 645, 649 n.5 (6th Cir. 2004) (unpublished disposition) (citing *Fogerty*, *supra*, 510 U.S. at 524, 527) (internal quotations omitted).

to deter similar conduct by these and other defendants; and 3) its motivation for bringing the suit – to protect its intellectual property interests – was appropriate.

Master Maintenance responds that Corbis is not entitled to attorneys' fees because: 1) defendants did not act frivolously or unreasonably; 2) defendants did not settle the case because Corbis' demands were too high; and 3) Corbis was not the prevailing party on all issues.

WCOIL likewise argues that Corbis is not entitled to attorneys' fees because: 1) its conduct was not frivolous, but rather defendants validly disputed the issue of whether their conduct was willful or innocent; 2) defendants' motivations were to "settle the case for a reasonable amount" [Doc. 115, at 15]; 3) defendants prevailed on some issues; and 4) the jury award adequately served the purpose of deterrence.

### 1. Frivolousness, Objective Reasonableness, Motivation

I decline to find that defendants' actions throughout this case were frivolous or objectively unreasonable to the extent that they require an award of attorneys' fees. Corbis and defendants understandably disagreed about the willfulness of the infringement and about the amount of damages. I thus do not view defendants' actions as frivolous or objectively unreasonable.[5]

---

[5] Corbis relies on *Studio A Entertainment, Inc. v. Action DVD*, 658 F. Supp. 2d 851 (N.D. Ohio 2009), to argue that defendants' failure to settle the case amounts to frivolous and unreasonable conduct. In *Studio A*, a case involving the purchase and sale of unauthorized copies of DVDs, the court had earlier granted summary judgment to plaintiff on the issue of liability and awarded plaintiff statutory damages of $750 per infringement. 658 F. Supp. 2d at 854.
  The court determined that an award of attorneys' fees was appropriate under the statute because defendants asserted "frivolous and objectively unreasonable arguments" including "that the DVDs were not bootleg copies as Plaintiff's [sic] could offer no evidence to show that they were unauthorized, despite the fact that there were noticeable differences between the authorized and the unauthorized copies." *Id.*
  The court also pointed out that "[t]he parties were engaged in settlement discussions early in the litigation, and . . . reached a tentative settlement agreement for approximately the statutory damage amount." *Id.* at 855. There had, thus, been a tentative settlement agreement early in the

Both parties also argue that the other engaged in bad faith tactics during discovery.[6] While "bad faith in the conduct of the litigation is a valid ground for an award of fees," *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 125 (2d Cir. 2001), I decline to base an award of fees on those grounds in this case. I, similarly, find nothing in any party's motivation on which to base an award of attorneys' fees in this case.

### 2. Compensation and Deterrence

The Copyright Act is intended to "encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, *supra*, 510 U.S. at 524.

"Attorney's fees may be awarded for reasons other than simply making the plaintiff whole, such as encouraging the assertion of colorable copyright claims and deterring infringement." *Chi-*

---

litigation for an amount similar to that the court ultimately awarded after four years of litigation. The court found that defendants' "conduct [in continuing the litigation was] unreasonable in light of the provision of the Copyright Act detailing damages and [defendants'] apparent knowledge throughout the litigation that the DVDs were unauthorized copies." *Id.*

Unlike *Studio A*, in the instant case defendants never argued that they had "authorized" copies of the infringed photos. Rather, defendants argued that their infringement was not willful, and that each did not know from where the photos originated. Here, additionally, the parties never reached even a tentative settlement agreement as they were far apart on an appropriate settlement amount. In fact, even the early settlement demands from Corbis were larger than the amount awarded by the jury.

*Studio A* is thus distinguishable from this case and does not compel me to a finding of frivolousness or objective unreasonableness under the facts before me.

[6] Corbis argues that Master Maintenance acted objectively unreasonably by failing to implement a litigation hold or search its computers for documents responsive to Corbis' discovery requests. Corbis also contends that defendants failed to participate in good faith settlement negotiations,pointing to instances where defendants failed to respond to Corbis' settlement offers or attempts to negotiate.

WCOIL contends that Corbis engaged in similarly unreasonable discovery tactics by objecting to defendants' interrogatories about the costs of infringement and litigation, rather than responding. WCOIL also argues that Corbis improperly used the threat of attorneys' fees to attempt to extract a settlement from defendants.

*Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1230 (7th Cir. 1991); *see also Superhype Publ'g, Inc. v. Vasiliou*, 838 F. Supp. 1220, 1227 (S.D. Ohio 1993) ("Attorney's fees may be awarded in infringement actions to make the party whole, but also, to encourage assertion of colorable copyright claims and to deter infringement.").

One reason to award attorneys' fees is to "ensure that all holders of copyrights which have been infringed will have equal access to the court to protect their works." *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1315 (S.D. Fla. 2003) (quoting *A & N Music Corp. v. Venezia*, 733 F. Supp. 955, 959 (E.D. Pa. 1990)).

In a case involving willful infringement, the Seventh Circuit noted that a decision to deny attorneys' fees in a case involving "small amounts of money," would "be to allow minor infringements, though willful, to be committed with impunity, to be in effect privileged, immune from legal redress." *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 609-10 (7th Cir. 2002).

Though *Gonzales* involved wilfullness, and this case resulted in no such finding,[7] I find the reasoning of *Gonzales* persuasive

Defendants infringed Corbis' copyrights. To deny attorneys' fees based on the relatively small jury award would flout the purposes of Copyright Act. Limiting attorneys' fees to solely high-value infringements could immunize low-value infringements because it might not be worth the copyright owner's effort and expense to prosecute. Awarding attorneys' fees in this case ensures that

---

[7] As the Second Circuit explained: "'[W]illfully' infringing and 'innocent intent' are not the converse of one another. Thus, it is possible in the same action for a plaintiff not to be able to prove a defendant's willfulness, and, at the same time, for the defendant to be unable to show that it acted innocently." *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986).

In this case, neither I nor the jury made any finding as to whether defendants' infringement was innocent or willful.

plaintiffs whose work has been infringed, no matter how small the value of the infringement, have access to the courts.

For reasons of deterrence and compensation, I thus find some award of attorneys' fees is appropriate in this case.

## II. Reasonableness

Corbis is not, however, automatically entitled to its actual attorneys' fees under the Copyright Act, but rather "a reasonable attorney's fee." 17 U.S.C. § 505. To determine a "reasonable" attorneys' fee, I use the "lodestar" approach. *Ametex Fabrics, Inc. v. Custom Interiors & Supply Co.*, 1998 WL 553046, *3 (6th Cir.) (unpublished disposition) (applying lodestar approach to copyright case); *see also Diamond Time*, *supra*, 371 F.3d at 896 (noting that district court first calculated the lodestar amount).

Under the lodestar approach, I multiply "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

"After calculating this amount, [I] should consider the factors mentioned in *Fogerty* and review the documentation relating to hours expended and the prevailing market rate for the work." *Ametex Fabrics*, *supra*, 1998 WL 553046, *3. I then consider whether any adjustments to the lodestar are appropriate. *Hensley*, *supra*, 461 U.S. at 434-36.

### A. Lodestar

#### 1. Hourly Rate

I look to the prevailing market rate to determine the reasonableness of the requested rate. *Northcross v. Bd. of Educ.*, 611 F.2d 624, 638 (6th Cir. 1979). The Sixth Circuit defines the "prevailing market rate" as the rate that "lawyers of comparable skill and experience can reasonably

expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).

"[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). There are numerous ways to demonstrate the prevailing market rate, including:

> (1) affidavits of other attorneys or experts; (2) citations to prior precedents showing reasonable rate adjudications for the fee applicant, for comparable attorneys, or for comparable cases; (3) references to fee award studies showing reasonable rates charged or awarded in the relevant community; (4) testimony of experts or of other attorneys in the relevant community; (5) discovery rates charged by the opposition party; and (6) reliance on the court's own expertise to recognize applicable prevailing rates.

*Mikolajczyk v. Broadspires Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007) (quoting *Disabled Patriots of Am. v. Genesis Dreamplex, LLC*, 2006 WL 2404140, *3 (N.D. Ohio)).

The hourly rates charged by Corbis' counsel in the instant case vary from $200 to $295 for associates, and from $505 to $595 for the partner working on the case.[8]

Corbis contends that these rates are reasonable because: 1) "the fees requested here are the actual rates paid by Corbis, a sophisticated and experienced litigant in intellectual property matters"; 2) "[t]he rates charged . . . are standard rates and are reasonable when compared with attorneys of like skill that are specialized in the field of intellectual property litigation"; and 3) "[b]ased on the attorneys' experience and expertise in copyright law, the rates charged are reasonable for this market, the Northern District of Ohio." [Doc. 108, at 27-28].

---

[8] Corbis also submits hourly bills for a law clerk at $125/hour and a staff person at $125/hour.

9

Corbis' evidence of reasonableness is unpersuasive. First, I decline to find that rates are reasonable merely because Corbis paid them in this case. A leading treatise notes that the attorney fee provision in the Copyright Act "does not authorize an award of the *actual* attorney's fee whatever it may be, but only of a 'reasonable' attorney's fee." 4 NIMMER ON COPYRIGHT, § 14.10[C] (emphasis added). This amount may be "less than the fee that would be proper between client and attorney." *Id.*

Second, Corbis relies on the results of a 2009 American Intellectual Property Law Association (AIPLA) report. This report, however, summarizes *total* litigation costs in copyright cases, both regionally and nationally. It does not speak to the reasonableness of any single attorney's hourly rate, and moreover, does not speak to the reasonableness of a rate in the Toledo area. *Cf. Digital Filing Sys., L.L.C. v. Agarwal*, 2005 WL 1702954, *4 (E.D. Mich.) (rejecting reliance on different AIPLA report because it contained nationwide, rather than local, data).

Third, while counsel's experience and expertise is relevant to determining a reasonable hourly rate, see, e.g., *Geier*, *supra*, 372 F.3d at 791, Corbis presents nothing to justify its hourly rates aside from Attorney Ridings' affidavit and biographies of each attorney. I find this inadequate.

In other cases involving counsel of varying levels of experience, I and other courts have found reasonable hourly rates for the Toledo area[9] in the range of $165-$350/hour for lead counsel or a partner, and in the range of $150-$200/hour for co-counsel or an associate.[10]

Based on the information before me regarding counsel's experience, prior case law, and my knowledge of the rates charged by counsel in the Toledo area, I find that reasonable hourly rates in this case are: $350/hour for Zych; $170/hour for Ridings and Sherban; $180/hour for Roach; $150/hour for Mirshak, Ritzert and Brosky; $120/hour for Yonker (a law clerk); and $75/hour for McCready (a staff person).

## 2. Number of Hours

---

[9] The relevant market is "the venue of the court of record," not the "geographical area wherein [counsel] maintains his office and/or normally practices." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). I look to market rates in the Toledo area because it is the largest city within the jurisdiction of the Western Division, and I infer from that fact that hourly rates for defending cases of this sort would be highest in the Toledo area, rather than elsewhere within this Division.

[10] *See, e.g.*, *Disabled Patriots of Am., Inc. v. Reserve Hotel, Ltd.*, 659 F. Supp. 2d 877, 893 (N.D. Ohio 2009) (finding rates of $350, $300 and $200/hour reasonable for three attorneys in an ADA case); *Mikolajczyk*, *supra*, 499 F. Supp. 2d at 965 ($250/hour reasonable in an ERISA case); *Nw. Ohio Adm'rs, Inc. v. Meridieth Constr.*, *Inc.*, 2010 WL 148083, *6 (N.D. Ohio) (finding rate of $155/hour reasonable after reviewing affidavits of other attorneys' rates ranging from "$165 per hour for a new partner, up to and including $340 per hour for some fully experienced senior partners"); *Disabled Patriots of Am. v. ODCO Invs., Ltd.*, 2009 WL 1767582, *3 (N.D. Ohio) (reducing requested hourly rates from $325/hour to $285/hour for lead counsel and from $225/hour to $185/hour for co-counsel in ADA case); *Thom v. American Std., Inc.,* 2009 WL 961182, *2 (N.D. Ohio) (finding, based on affidavits submitted, that "[a]ssociates in the Toledo legal community bill between $150/hour and $195/hour"); *Disabled Patriots of Am. v. Cedar Fair, L.P.*, 2008 WL 408695, *2-3 (N.D. Ohio) (reducing requested rates from $385/hour to $285/hour, and from $225/hour to $185/hour in ADA case); *Disabled Patriots of Am. v. Genesis Dreamplex, LLC*, 2006 WL 2404140, *4, *7 (N.D. Ohio) (reducing requested rates from $325/hour to $275/hour, and from $275/hour to $175/hour); *cf. Studio A Entm't*, *supra*, 658 F. Supp. 2d at 858 (finding a rate of $300/hour reasonable in a copyright case in Cleveland).

Corbis' billing records indicate 613.75 hours of work by seven attorneys, one law clerk and one staff person.[11]

Defendants object to the number of hours for which Corbis seeks compensation. They contend: 1) Corbis' attorneys spent unreasonably excessive amounts of time on certain tasks; 2) Corbis' time descriptions are vague and often list multiple tasks in a single entry; 3) attorneys unnecessarily performed administrative tasks; and 4) some billing entries reflect duplication of effort.

In determining a reasonable number of hours, the Supreme Court has held that attorneys seeking statutory fees are expected to use the same "billing judgment" as a private attorney would use in billing a client. *Hensley*, *supra*, 461 U.S. at 434. This judgment requires attorneys to make a good faith effort to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id.*

The party requesting fees must present enough detail for me to determine whether the hours were "actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984).

Having carefully reviewed the billing records submitted, I find that Corbis has sufficiently demonstrated that most hours were "actually and reasonably expended." *Id.*

Defendants' objection to the witness preparation costs, are, however, well taken. Corbis had two attorneys fly to both Seattle and New York to prepare witnesses for trial – both billing for travel costs, travel time and witness preparation. As one court has noted: "While a party to a litigation may

---

[11] Ridings' affidavit indicates that Corbis seeks reimbursement for 615 hours. After examining Corbis' own billing statements, I repeatedly arrived at the 613.75 figure. This includes 185.5 hours by Zych, 22.5 hours by Roach, 361 hours by Ridings, 12.75 hours by Brosky, 10 hours by Mirshak, 8.75 hours by Ritzert, 8 hours by Sherban, 1.25 hours by Yonker (a law clerk) and 4 hours by McCready (a staff person).

choose its own level of litigation expense, it may not impose its approach on a losing adversary." *Queenie, Ltd. v. Nygard Int'l*, 204 F. Supp. 2d 601, 608 (S.D.N.Y. 2002). I find the costs of these two trips are excessive and should not be entirely borne by defendants. I thus eliminate the fees for this trip for one attorney – Zych – while permitting the fees for the other – Ridings.[12]

The lodestar attorney fee amount is thus $126,467.50.[13]

### B. Adjustments to Lodestar

The product of reasonable hours times a reasonable rate does not end the inquiry. "There remain other considerations that may lead [me] to adjust the fee upward or downward." *Hensley*, *supra*, 461 U.S. at 434. I may adjust the lodestar based on what is "reasonable under the circumstances" of the specific case." *Lieb*, *supra*, 788 F.2d at 156. These considerations include: 1) the degree of success achieved by the prevailing party, see *Hensley*, *supra*, 461 U.S. at 436, 2) the relative complexity of the litigation, *Lieb*, *supra*, 788 F.2d at 156; 3) the relative financial strength

---

[12] Though I grant fees for one attorney to travel out of state to prepare witnesses in this instance, I have great reservations about a party foregoing other less costly means of preparation such as videoconference or telephone. In the future, counsel should anticipate that I will be less generous with the opposing party's money.

I also recognize that both attorneys billed travel time and "trial preparation" together, see, e.g. Doc. 120-1, at 71 ("Travel to Seattle for witness preparation; trial preparation."), however, "where billing records 'lump[]' together time entries under one total so that it [is] 'impossible to determine the amount of time spent on each task,'" *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 535 (6th Cir. 2008), I may reduce attorneys' fees. Because I cannot separate the time the attorneys spent working on trial preparation from that spent on travel or witness preparation, I use the rough method of simply eliminating one attorney's time and allowing the other to remain.

I note, parenthetically, that whether or not an attorney should be awarded fees *at all* for travel time at the usual hourly rate is "within the discretion given the district court, which has greater familiarity with local practice." *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991).

[13] This is 155.75 hours at $350/hour for Zych, 22.5 hours at $180/hour for Roach, 361 hours at $170/hour for Ridings, 12.75 hours at $150/hour for Brosky, 10 hours at $150/hour for Mirshak, 8.75 hours at $150.hour for Ritzert, 8 hours at $170/hour for Sherban, 1.25 hours at $120/hour for Yonker, and 4 hours at $75/hour for McCready.

of the parties, *id.*; 4) the damages awarded, *id.*; and 5) whether the losing party acted in bad faith, *id.*

In *Hensley*, the court noted that prevailing at trial "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." 461 U.S. at 436.

I should, therefore, "award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440.

Another district court within the Sixth Circuit explained:

> While [plaintiff]'s victory in this case is not merely a hollow one and will undoubtedly resound to [its] benefit insofar as other potential infringers of its publications are concerned, its present victory results in a monetary recovery far less than what it sought. The court has awarded [plaintiff] only approximately one-tenth of the damages it has requested, based on the court's rejection of jurisdiction over [one claim]. Under the circumstances, the court concludes that the lodestar amount should be reduced by one-third to reflect this limited success.

*Marshall & Swift v. BS&A Software*, 871 F. Supp. 952, 964-65 (W.D. Mich. 1994).

Other courts have recognized that a reduction in the lodestar amount may be appropriate when plaintiff recovers significantly less in damages than requested. *Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*, 345 F. App'x 244, 249 (9th Cir. 2009) (unpublished disposition) (noting, in a case where a district court awarded attorneys' fees, that "although [plaintiff] technically prevailed against [defendant], we acknowledge that [plaintiff's] limited success (essentially nominal damages) would have supported an award of no fees (or significantly lower fees)"); *Wheat v. Benton County, Tenn.*, 2010 WL 908653, *4 (W.D. Tenn.) (reducing lodestar amount forty percent in Title VII case because "the amount of compensatory damages the jury awarded was substantially lower than what Plaintiff sought[,] . . . there were no punitive damages awarded and Plaintiff recovered judgment on few of the claims she presented, and then, only against one Defendant");

*Cynthia Hunt Productions, Ltd. v. Evolution of Fitness, Houston Inc.*, 2007 WL 3047220, *4 (S.D. Tex.) ("In this case, CHP initially sought damages in the amount of $750,000. The court awarded a total of three times the actual damages, $6,246.45, in statutory damages, in addition to an injunction. The limited success obtained on the requested damages justifies a reduction to the lodestar. Given the disparity between the damages ultimately awarded and those originally sought, the lodestar is appropriately reduced by one-half." (internal citation omitted)); *Kadri v. Johnson*, 2005 WL 3454330, *7 (W.D. Tenn.) (reducing lodestar amount by twenty-five percent in case where "[p]laintiff prevailed on his sole claim of hostile work environment discrimination under Title VII, but the amount of damages the jury awarded was substantially lower than what Plaintiff sought to recover").

> As one court summarized, in a copyright case:
>
> One method for measuring a prevailing party's success is to consider the amount of damages awarded compared to the amount of damages requested. *Farrar v. Hobby*, 506 U.S. 103, 114 [] (1992); *Washington*, 89 F.3d at 1042 (noting that "[t]he amount of damages awarded, when compared with the amount of damages requested, may be one measure of how successful the plaintiff was in his or her action"). When plaintiffs have received far less damages than they originally sought, courts have often reduced the lodestar. *See, e .g.*, *Washington*, 89 F.3d at 1043 (reducing fee by fifty percent in part because damages award amounted to less than four percent of the damages demanded); *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir.1995) (upholding lodestar reduction from $9,783.63 to $500.00 because damages award "was a mere five percent of the amount of statutory damages [plaintiff] initially sought"); *Sheffer v. Experian Info. Solutions, Inc.*, 290 F. Supp. 2d 538, 551 (E.D.Pa.2003) (reducing lodestar by more than two-thirds when plaintiff sought $300,000 in damages but was awarded only $1,000); *Hall v. Am. Honda Motor Co.,* Civ. A. No. 96-8103 [],1997 WL 732458, at *4 (E.D.Pa. Nov.24, 1997) (reducing fee award by ten percent when the judgment was only eight percent of the damages sought by plaintiff); *Hilferty v. Chevrolet Motor Div. of Gen. Motors Corp.*, Civ. A. No. 95-5324 [], 1996 WL 287276, at *5-7 (E.D.Pa. May 30, 1996) (reducing fee award by approximately two-thirds when plaintiff recovered less than eight percent of damages sought).

*Cynthia Hunt*, *supra*, 2007 WL 3047220, *4.

Nevertheless, the Sixth Circuit has cautioned that in the context of statutory attorney fee authorizations:

> In considering the result of litigation vis-a-vis a claim for fees, it is essential that, in cases such as the one at bar where Congress has authorized the recovery of fees, the court be cognizant that the result achieved is necessarily more than mere financial gain. The recovery of attorney fees is a tool utilized by Congress to encourage the vindication of congressionally identified policies and rights, as well as to enable the plaintiff to obtain damages without expense for legal assistance. Too great an emphasis on the amount realized from the judgment would detrimentally encourage attorneys to concentrate on increasing the damage award, perhaps with harm to the merits of the case; moreover, transfixion on the damage amount in establishing fees would penalize those litigants whose cases carry slight pecuniary damages, but which present instances of significant statutory violations.

*United Slate*, *supra*, 732 F.2d at 503.

Mindful of these cases, I find that a further reduction is appropriate in this case. While Corbis clearly prevailed in its copyright infringement action, "its present victory results in a monetary recovery far less than what it sought." *Marshall & Swift*, *supra*, 871 F. Supp. at 965.[14] This litigation was, additionally, not complex.

I therefore find that a further forty percent reduction of the lodestar amount is appropriate to "award only the amount of fees that is reasonable in relation to the success obtained." *Hensley*, *supra*, 461 U.S. at 435, and in light of the relative level of complexity of the case and the damages awarded.

I believe that this award takes into account the balance between: 1) *United Tile*, *supra*, and the need to ensure that plaintiffs have access to court to litigate significant violations; and 2) the degree of success plaintiff achieved in this case with regard to the complexity of the case. *See*

---

[14] While Corbis is correct that *Marshall & Swift* is based in part on the fact that the plaintiff in that case did not succeed on all of its claims, I find its reasoning still instructive here.

*Hensley*, *supra*, 461 U.S. at 436; *Lieb*, *supra*, 788 F.2d at 156. The amount also "meets the compensatory and other goals of the statute." *Cynthia Hunt*, *supra*, 2007 WL 3047220, *4.

I thus award Corbis $75,880.50 in reasonable attorneys fees under 17 U.S.C. § 505.

### III. Costs

Corbis also requests $22,293.41 in costs. These costs include phone charges, filing fees, service of process costs, electronic legal research costs, photo copies, mailing expenses and attorney travel, lodging and food expenses.

Defendants specifically object to the costs incurred for: 1) depositions; and 2) witness preparation.

Under the Copyright Act, I "may allow the recovery of full costs." 17 U.S.C. § 505.[15]

Defendants first argue that the cost of depositions is unreasonable. Defendants argue that counsel for WCOIL offered to hold depositions at his office in Lima, Ohio, to minimize expenses.

---

[15] Courts are split on the meaning of "full costs." Some hold that it means only those costs authorized by 28 U.S.C. § 1920 ("taxable costs"). *See Pinkham v. Camex, Inc.*, 84 F.3d 292, 295 (8th Cir. 1996) (concluding that § 505 did not clearly evidence congressional intent to exceed the scope of costs authorized by § 1920); *see also Artisan Contractors Ass'n, of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039-40 (11th Cir. 2001).

On the other hand, some courts hold that other non-taxable costs – outside of those available under § 1920 – may also be awarded under § 505. *See Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 887 (9th Cir. 2005) (holding that "district courts may award otherwise non-taxable costs, including those that lie outside the scope of § 1920, under § 505 "); *Invessys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16, 22 (1st Cir. 2004) (holding that costs of electronic legal research, costs not enumerated as taxable under § 1920, are nevertheless reimbursable under § 505); *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 458 (7th Cir. 2001) ( "[A]ny award of fees and non-taxable costs must come through [§ 505], and not through the general cost provisions of 28 U.S.C. § 1920.").

The Sixth Circuit has not taken a position on the issue, but has affirmed an award of non-taxable costs under § 505. *See Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002). Because the Sixth Circuit has done so, and because defendants do not specifically challenge an award of non-taxable costs, I examine all costs.

Defendants contend that Corbis' counsel first agreed, and then refused. Corbis responds that the depositions were held in Toledo, Ohio, a convenient midpoint between Cleveland – where Corbis' counsel works, and Lima – where defendants' counsel is located. I decline to find anything unreasonable about the costs of the depositions.

As discussed above, I do, however, agree with defendants' objection to the costs related to witness preparation. I thus reduce by half the costs billed for both the Seattle and New York witness preparation trips.

I thus award Corbis costs in the amount of $19,762.13 (the amount requested less $2,531.28).

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT plaintiff's motion for fees and costs [Doc. 108] be, and the same hereby is granted in the amount of $95,642.63.

The Clerk shall enter judgment against the defendants jointly and severally accordingly.

So ordered.

s/James G. Carr<br>
U.S. District Judge